**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Daniel L. Rittner Sr.,                                  Case No. 3:13CV1345

        Plaintiff

        v.                                          **ORDER**

Jessie Williams, Warden, et al.,

        Defendants

This is a prisoner's civil-rights suit under 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

The pro se plaintiff, Daniel Rittner, alleges prison officials have been deliberately indifferent to his serious medical needs, refused to make reasonable accommodations in light of his disability, and violated his right to access the courts.

Jurisdiction is proper under 28 U.S.C. § 1331.

Pending is the defendants' motion for judgment on the pleadings. (Doc. 94). For the following reasons, I grant the motion in part and deny it in part.

**Background**

Rittner filed this action in June, 2013 against the Ohio Department of Rehabilitation and Correction; the Allen Correctional Institution; Wardens Jesse Williams, John Coleman, and Kevin Jones; Assistant Warden Ray Schaublin; Victim Services worker D. Hall; Brooke Featheringham, the prison's Unit Manager Administrator and ADA Coordinator; Health Care Administrator Kris

Edwards; Collegial Review Board members Andrew Eddy, John Gardner, and F/n/u Arnold; and other unknown officers and employees of Allen Correctional Institution.

I initially dismissed Rittner's complaint under 28 U.S.C. § 1915(g), as Rittner had, "on at least eight prior occasions, filed an action in federal court that was dismissed as frivolous or for failure to state a claim for relief," and had not adequately alleged he was in imminent danger of physical harm. *Rittner v. Williams*, 2013 WL 4782356, *1 (N.D. Ohio); *see also Rittner v. Williams*, 2013 WL 5428738 (N.D. Ohio) (denying reconsideration).

Rittner appealed, and the Sixth Circuit reversed, concluding Rittner's allegations were sufficient to invoke the imminent-danger exception. *Rittner v. Williams*, No. 13-4099 (6th Cir. Apr. 30, 2014).

Rittner has filed a complaint (Doc. 1), an addendum thereto (Doc. 1-3), and an "amended and or supplemental" complaint (Doc. 55). Viewed in the light most favorable to Rittner, these filings contain the following allegations.

### A. Original Complaint

#### 1. General Health

Rittner suffers from "a plethora of diagnosed serious medical conditions," including cervical spandylosis, degenerative disc disease, nerve damage, and osteoarthritis. (Doc. 1 at ¶¶5, 9).

Due to his many ailments, Rittner "cannot take most pain drugs" to treat his chronic pain. (*Id.* at ¶10). A clinical pain specialist, Dr. Stephen E. Paquelet of the Ohio State University, has "prescribed treatment, care, [and] diagnostic tests" for Rittner's conditions. (*Id.* at ¶6).

But three of the defendants – Eddy, the Collegial Review Board, and ODRC – have "interfer[ed] with the prescription and care" by "delaying" and "denying" the prescribed care. (*Id.*

at ¶7). These defendants denied Rittner such prescribed medical care as a repaired TENS unit; MRIs and an EMG; consults with a neurologist and orthopedist; and lidocaine, muscle rub, and "natural tears." (*Id.* at ¶12).

As a result, Rittner has experienced "torturous pain and mental anguish" and the inability to use "one or both [of his] arms and hands." (*Id.* at ¶¶14, 15).

In addition, prison officials have denied Rittner's requests to "self carry" his seizure medication, even though "[t]here are at least two inmates known to Rittner that are allowed to self–carry seizure drug[s]." (*Id.* at ¶74).

### 2. Vision

Rittner also alleges the defendants have "delayed/denied care to prevent blindness," though Rittner does not allege he has gone blind. (*Id.* at ¶23).

He contends that he received treatment at OSU in April, 2013, for a possible detached retina. Although doctors there scheduled a follow-up visit in two-to-four weeks, the defendants "delayed the provision of medical care," causing an increased risk of Rittner going blind. (*Id.* at ¶25).[1] Rittner further alleges the only treatment he has received for his eye problems are shaded tri-focals, sunglasses, and a substance to alleviate "night time dryness." (*Id.* at ¶27).

### 3. Access to the Courts

Rittner also complains that the defendants have denied him access to the courts, in violation of the First and Fourteenth Amendments.

---

[1] An exhibit to Rittner's complaint reflects prison staff had "processed" the follow-up appointment by April 29 – twenty-three days after Rittner first received treatment at OSU. (Doc. 1-2 at 5).

Rittner faults the three Wardens and Assistant Warden Schaublin because Rittner has "insufficient funds to bring the Eight Amend [*sic*] Complaint" in this case, and because Rittner cannot afford to attach all necessary exhibits to his complaint. (*Id.* at ¶30). He contends the prison must allow him "to go in[to] debt" so that he can "meet filing requirements[.]" (*Id.* at ¶51).

Rittner also alleges Warden Williams issued a written order "not to correspond with . . . the Ohio Attorney General," who represents the defendants in this case. (*Id.*). Rittner contends this order effectively prevents him from filing responsive documents in this suit and in the many other cases in which the Attorney General represents a defendant whom Rittner has sued.

### 4. Legal Mail

Rittner claims that, on March 26, 2013, the Warden ordered "the confiscation and presumably the destruction of Rittner's legal mail from the Fulton County Court." (Doc. 1 at ¶40). He contends the "legal mail" at issue was "exculpatory criminal evidence" that he needed to prosecute "In re Barber," a case he pursued to the Ohio Supreme Court. (*Id.* at ¶44); *see also State ex rel. Rittner v. Barber*, 138 Ohio St. 3d 1465 (2014) (Table).

Rittner alleges that, after confiscating his legal mail, the Warden transferred the mail to "'Victim Services.'" (Doc. 1 at ¶48). According to Rittner, he "can now expect an unfavorable parole consideration when victim servers [*sic*] are consulted at time of parole hearing." (*Id.*).

Finally, Rittner alleges he was "threatened" by the Ohio State Highway Patrol for requesting "exculpatory documents." (*Id.* at ¶47).

### 5. ADA Claims

Rittner claims that prison officials recognize that he has "multiple disabilities," and that officials have granted him accommodations like "bottom bunk – bottom range, lite [*sic*] duty, soft

restraints on transport, booster seat, pen grippers, non-compliance of rule to stow locker box under bed[, and] extra-toilet issue." (*Id.* at ¶18).

He contends that, due to his disabled status, he cannot participate in any "rehabilitative re-entry programs necessary for favorable parole consideration." (*Id.* at ¶60). According to Rittner, such programs "are mandated by Ohio's out-of-control parole board." (*Id.*).

Rittner also argues he needs "a second hearing aid" (*Id.* at ¶63). Although he has asked defendant Featheringham to provide the hearing aid, she "historically lacks diligence in responding to Rittner's requests" and in one case took fifteen months to respond. (*Id.* at ¶64). These dilatory responses, Rittner continues, violate the ODRC's own guidelines, which state "an inmate request must be answered within 'ten working days.'" (*Id.* at ¶65).

Rittner claims the ODRC denied him a second hearing aid based on "the erroneous opinion that hearing loss is due to 'old age,'" when in fact his hearing loss is due to "injury, four related surigies [*sic*, and] eleven years of exposure to multiple jet engine noise." (*Id.* at ¶72). Rittner argues defendant Edwards has "chilled" his exercise of his ADA rights by giving him "a direct order to stop making any appeal to the denial of a second hearing aid." (*Id.* at ¶70).

### B. Addendum to the Original Complaint

Rittner alleges that, after he was diagnosed with "the possibility of glaucoma, retinal detachment, and or optic neuritis," he submitted a "kite" to prison staff requesting "mental health intervention because of the significance change and new diagnosis of the[se] . . . serious medical conditions." (Doc. 1-3 at ¶¶2-3).[2]

---

[2] "In prison parlance, the word 'kite' . . . refers to internal complaints, typically informal in nature, from prisoners to prison staff." *Peterson v. Foco*, 2010 WL 5058352, *2 (W.D. Mich.).

When the kite went unanswered, Rittner submitted two more kites to which the defendants also did not respond.

Rittner contends he should be on "the mental health case load" because "evidenced [*sic*] adduced in Rittner's underlying criminal case by forensic psychologists indicates Rittner <u>is</u> diagnosed 'schizoaffective disorder' and additional 'longstanding history of mental illness.'" (*Id.* at ¶7) (emphasis in original).

### C. Amended/Supplemental Complaint

Rittner's amended/supplemental complaint raises eight claims that arose "after the filing of the original complaint." (Doc. 55 at 2).

### 1. Failure to Address Requests for Medical Treatment

Rittner first alleges the defendants were deliberately indifferent to his serious medical needs "in their response to over sixty (60) attempts to prevent imminent death, heart attack, coma, stroke and seizure." (Doc. 55 at 2). He also alleges the defendants refused to schedule him for "chronic care contrary to ODRC policy" and refused to "renew prescribed life sustaining medications for long term care." (*Id.* at 3).

Rittner contends that the defendants' refusal to provide him care or treatment exacerbated his "thyroid condition, arthritis, chronic pain, and other conditions[.]" (*Id.* at 6).

### 2. Heart Palpitations

On March 4, 2014, Rittner presented to a nurse with "classic symptoms of serious heart condition described as 'heart palpitations.'" (*Id.* at 7). Nevertheless, defendant Pederson "performed no examination of Rittner" and "denied all medical care and treatment." (*Id.*).

### 3. Pain and Confusion

Rittner next alleges that, at 10:00 p.m. on March 11, 2014, he requested care for "pain and confusion." (*Id.*). The next day, a member of the prison's medical staff "paraded" Rittner through an exam room and "scream[ed] offensive remarks about Rittner and his requests (over 60 total) for care[.]" (*Id.*). Rittner did not receive any care or treatment, despite having "a mental break" and experiencing the complete shutdown of his bodily functions.

### 4. Denial of Medical Care

On March 25, 2014, prison staff "screened" Rittner and "denied [him] access to any" medical care or treatment. Rittner also alleges the defendants charged him a co-pay for this incident, but that it was "later reimbursed in admission that the defendants had displayed deliberate indifference to Rittner's serious medical needs." (*Id.* at 8).

### 5. Delayed Annual Physical

Rittner contends the defendants improperly delayed his annual physical by four months "in retaliation for engaging in protected conduct." (*Id.* at 9).

### 6. Leg Pain

On June 29, 2014, Rittner began experiencing "severe leg pain that threatens his ability to walk[.]" (*Id.*). Rittner reported the matter to the defendants, but they did not respond until July 1.

When Rittner visited the infirmary, a nurse "ordered x-rays, Prednasone, and crutches." (*Id.* at 10). At the nurse's request, another inmate attempted to help Rittner on and off the x-ray table. This procedure caused "excruciating pain that delayed the procedure for ten minutes[.]" (*Id.*).

Despite using crutches, Rittner was unable to attend meals, retrieve his legal mail (which defendants "delivered to him at his unit"), shower, lay, stand, or sleep. (*Id.*).

### 7. Follow-Up Exam for Leg Pain

Rittner next claims that defendants refused to schedule a follow-up exam regarding his leg pain because Rittner failed to make a co-pay. Rittner contends the co-pay requirement forces him to choose, in violation of the Constitution, between his right to obtain medical care and his right to access the courts (via filing various lawsuits).

### 8. Retaliation

Finally, Rittner alleges defendant Edwards retaliated against him by making "death threats," intentionally delaying medical treatment, and filing "trumped up false disciplinary charges." (*Id.* at 11). All of this, Rittner contends, was in retaliation for his filing of this lawsuit, many prison grievances, and requests for medical care.

### Standard of Review

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be take as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

In ruling on the motion, I may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Even when an exhibit is part of the pleadings, however, "it is not always appropriate to assume everything in an exhibit is true." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441 (6th Cir. 2012). As the Sixth Circuit has explained:

Case: 3:13-cv-01345-JGC Doc #: 136 Filed: 03/29/16 9 of 20. PageID #: 1223

> Although a blanket adoption rule makes sense in the context of an attached contract or loan agreement because the contract represents an agreement between two or more parties to which the law binds them, the rule makes much less sense when, as is the case here, the exhibit is not a legally dispositive document.

*Id.* at 442.

## Discussion

### A. Deliberate Indifference Claims

To state a claim under § 1983, Rittner must allege "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

The bulk of Rittner's § 1983 claims allege the defendants violated the Eighth Amendment by showing deliberate indifference to his serious medical needs.

"The Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).

To state a deliberate-indifference claim, an inmate must allege: 1) he has serious medical needs; and 2) prison officials "possessed a sufficiently culpable state of mind in denying medical care." *Kindl v. City of Berkley*, 798 F.3d 391, 398 (6th Cir. 2015).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

A prison official has a culpable state of mind when he "knows of and disregards an excessive risk to inmate health and safety[.]" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

### 1. Defendants' Arguments

9

The defendants argue the thrust of Rittner's complaint is that "he is not receiving [the] medical care of his choosing[.]" (Doc. 94 at 12). They contend Rittner's complaint boils down to allegations that he is entitled "to control exactly how, from whom, [and] exactly when he receives treatment[.]" (*Id.* at 36).

I reject this argument, as it is inconsistent with my obligation to view the allegations in the light most favorable to Rittner.

This is not to say all, or even most, of Rittner's allegations are non-frivolous. Indeed, as I explain below, I will dismiss the bulk of Rittner's claims because they fail to allege plausible Eighth Amendment claims. But in doing so, I do not rely on the defendants' arguments for dismissal.

Defendants also contend the exhibits to Rittner's complaint "establish that [he] received lots of health care, and was seen by staff numerous times," thereby refuting his claims for relief. (*Id.* at 34). This contention fails for two reasons.

First, Rittner does not dispute that he received "lots" of medical care and attention from the prison's medical staff. His dispute is that the care he received, and the treatment that the defendants allegedly refused to provide, amounted to deliberate indifference. Accordingly, the fact Rittner may have received "lots" of treatment does not dispose of his Eighth Amendment claims.

Second, the defendants' arguments often make impermissible use of the exhibits Rittner attached to his complaint.

Most of the exhibits that Rittner attached are requests for medical treatment, "kites" in which Rittner communicates with one or more members of the prison's medical staff, and other correspondence between Rittner and the defendants. On many of these exhibits, a prison staff member would respond to Rittner's inquiry in a handwritten notation. In seeking judgment on the

10

pleadings, the defendants seize on some of the statements they or other prison workers made on the exhibits to refute the truth of Rittner's allegations.

But considering the exhibits for that purpose "would impermissibly allow [the defendants] to question the evidentiary foundation of [Rittner's] complaint, thereby depriving [him] of the presumption of truth to which [he] is entitled at this stage of the litigation." *Carrier Corp.*, *supra*, 673 F.3d at 442; *accord Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 634-35 (N.D. Ohio 2014).

Third, defendants argue that I should dismiss ¶¶1-6, 8-11, 13-20, 47-63, 67-69, 70-79, 81-82, 86, and sections of ¶¶94, 96, and 97 of the complaint because these paragraphs "fail to identify any single defendant." (Doc. 94 at 32).

Defendants are correct that Rittner must plead that each defendant, through his own conduct, has violated the Constitution. *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013). But it is apparent from the complaint, disjointed as it is, that Rittner did not intend for each paragraph to state an independent claim for relief. Many of the paragraphs merely provide, or attempt to provide, factual support for Rittner's claims.

Accordingly, I will not grant the motion on this ground.

### 2. Plausibility of the Eighth Amendment Claims

### a. Original Complaint

### (i). General Health

Rittner's allegations that defendants have "interfer[ed] with the prescription and care" ordered by OSU pain specialist Dr. Paquelet, by "delaying" and "denying" such care, state a plausible Eighth Amendment claim. (Doc. 1 at ¶¶1-17).

11

Taken in the light most favorable to Rittner, these allegations suggest defendants substituted their own untutored understanding of Rittner's ailments, and the treatment needed to manage them, for the learned, professional opinions of Dr. Paquelet. *Cf. Beair*, *supra*, --- F. Supp. 3d at ----, 2016 WL 229403, at *4.

This is especially so, given Rittner's allegations that defendants made treatment decisions primarily with reference to financial considerations.

However, Rittner's allegation that prison officials have refused to allow him to "self carry" his seizure medication does not state a claim on which relief may be granted. Rittner does not allege prison official refuse to provide him seizure medication, only that they will not let him carry the medicine himself. There is no authority for the proposition an inmate has a constitutional right to carry his medication and administer it whenever he sees fit.

### (ii). Vision

Rittner's allegations that prison staff "delayed" a follow-up appointment relating to his diagnosis of potential detached retina do not state a plausible claim.

He alleges the follow-up appointment was to occur between two and four weeks after the diagnosis, yet he does not allege how long officials allegedly "delayed" this appointment. Moreover, an exhibit attached to Rittner's complaint reflects that, as of April 29, 2013 – little more than three weeks after his original diagnosis – the follow-up appointment "has been processed & scheduled." (Doc. 1-3 at 5).

Likewise, Rittner's allegations that prison staff provided him with only tri-focals, sunglasses, and a substance to reduce "night time dryness" are insufficient to establish a plausible deliberate-indifference claim.

Nothing in the complaint suggests a doctor determined Rittner needed some other form of care to treat his vision problems, and Rittner does not allege the treatment he did receive was so inadequate as to amount to deliberate indifference. Nor is there any basis to infer: 1) any of the defendants recognized that, if Rittner did not receive additional, unspecified treatment for his vision, he would suffer serious harm; or 2) defendants nevertheless disregarded that risk and failed to take reasonable measure to alleviate it. *Farmer*, *supra*, 511 U.S. at 847.

### b. Addendum to Original Complaint

Rittner's allegations that prison officials did not respond to his request for "mental health intervention" likewise fail to state a plausible Eighth Amendment claim.

The addendum contains no facts satisfying the subjective component of the claim – i.e., that prison officials recognized Rittner faced a substantial risk of serious harm if he were denied "mental health intervention." Although Rittner alleges documents in the case file of his underlying criminal case establish he suffers from schizoaffective disorder and a long history of mental illness, nothing in the complaint suggests any of the defendants were aware of this information – let alone that they acted wantonly in refusing to consider it when evaluating Rittner's request.

### c. Amended/Supplemental Complaint

#### (i). Failure to Address Requests for Care

Defendants have failed to persuade me these allegations (Doc. 55 at 2-7) do not state a plausible deliberate-indifference claim.

Indeed, Rittner has alleged he suffered from many serious medical conditions, and that defendants refused to provide multiple forms of treatment to address those conditions. This is so

13

even though certain medical professionals, whom Rittner refers to as "ALPs" or "advanced licensed providers," determined such treatments were medically necessary.

It is, therefore, not implausible to infer, at this stage of proceedings, the failure to adhere to a prescribed or recommended course of treatment could amount to deliberate indifference.

### (ii). Heart Palpitations

Rittner has failed to allege a plausible deliberate-indifference claim based on the defendants' handling of his "heart palpitations."

On the contrary, Rittner's allegations establish he visited the nurse, and the nurse examined him after he presented with "classic symptoms" of "heart palpitations." (Doc. 55 at 7). That the nurse failed to provide additional care does not establish an Eighth Amendment violation, as nothing in the complaint suggests: 1) the nurse recognized that failing to provide additional treatment would subject Rittner to a serious risk of harm; and 2) she nevertheless knowingly failed to provide such treatment.

### (iii). Pain and Confusion – March 11, 2014

Rittner's allegations concerning his treatment – or mistreatment – by prison authorities on March 11, 2014 state a plausible Eighth Amendment claim. He contends that, after suffering a "mental break" and the complete shutdown of his bodily functions, a prison staff member "paraded" him through an exam room and "scream[ed] offensive remarks" about Rittner. This is hardly conduct suggesting prison officials acted reasonably in responding to an inmate's serious medical needs.

### (iv). Denial of Care – March 25, 2014

To the extent Rittner bases an Eighth Amendment claim on the allegations that prison staff "screened" him on March 25, 2014, but "denied [him] access to any" medical care or treatment, such a claim would be implausible. Rittner does not allege what ailment brought him to medical staff that day, nor does he allege any conduct on the defendants' part suggesting they were deliberately indifferent to his serious medical needs.

At best, Rittner's allegations show he received attention from the prison's medical staff, which determined no further care or treatment was needed to resolve whatever ailed Rittner that day.

**(v). Delayed Annual Physical**

Whether Rittner's allegation that the prison delayed his "annual physical" by four months does not states a plausible Eighth Amendment claim is a close question. (Doc. 55 at 9).

On the one hand, there are no facts suggesting the annual physical was needed to spare Rittner from a substantial risk of serious harm. On the other, Rittner alleges the basis for the delay was, not some legitimate, reasonable, or medically appropriate ground, but a desire to retaliate against Rittner.

Given the prospect of impermissible retaliation, I will not grant the motion as to this contention.

**(vi). Leg Pain**

Rittner's allegations concerning the treatment he received for leg pain on June 29, 2014, do not state an Eighth Amendment claim.

Rittner's complaint alleges that, two days after he reported leg pain, prison staff took him to the infirmary, where a nurse took x-rays and provided Rittner with crutches and Prednasone. Rittner does not claim this treatment was insufficient in any way.

Thus, these allegations tend to show prison officials took seriously their obligation to tend to Rittner's needs, not that they were deliberately indifferent to those needs. And though Rittner faced obstacles after receiving this treatment – he could not attend meals, shower, sleep, or retrieve his legal mail – nothing suggests this was due to prison officials' failure to treat Rittner reasonably. Rather, it appears to be part of the ordinary and expected rehabilitative process.

Finally, Rittner complains he experienced excruciating pain during the infirmary visit when, at a nurse's request, a fellow inmate tried to help Rittner on and off the x-ray table. But nothing in the complaint plausibly suggests the nurse acted wantonly or cruelly in asking for assistance in getting Rittner on and off the table.

### (vii). Follow-up Appointment for Leg Pain

It is unclear whether Rittner alleges defendants refused to schedule the follow-up appointment because he could not afford to make the co-pay, or whether he claims charging the co-pay at all is unconstitutional. (Doc. 55 at 10-11).

"It is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed services regardless of ability to pay." *White v. Corr. Med. Servs., Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004).

Reading the complaint in the light most favorable to Rittner, it is possible to infer the defendants denied him medical care because he could not, or would not, pay the fee. Accordingly, I will not dismiss this claim.

### (viii). Retaliation

Finally, Rittner has adequately alleged defendant Edwards retaliated against him for filing what Edwards believed to be frivolous requests for medical care. I will not dismiss this claim, either.

16

### B. Access to the Courts

The First Amendment guarantees to inmates a right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996).

"Although the Constitution assures adequate, effective, and meaningful access, the right is nevertheless not unlimited. For example, the right relates only to challenges to the inmate's conviction or sentence or to challenges to the conditions of confinement." *Combs v. Bunting*, 2016 WL 98596, *4 (S.D. Ohio) (internal quotation marks and citation omitted).

### 1. Communication with Ohio Attorney General

Rittner's contention that defendant Williams violated his right to access the courts by ordering him to cease communicating with the Ohio Attorney General's Office is untimely.

Defendant Williams gave this command in December, 2009. However, the limitations period for § 1983 claims is two years, *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989); O.R.C. § 2305.10, and Rittner did not file this complaint until 2013.

Rittner contends Williams's conduct amounts to a continuing violation of his First Amendment rights, and thus that the statute has not yet run. (Doc. 110-1 at 20-21). But the injury Rittner complains of was complete when Williams gave the command. Moreover, I note the Sixth Circuit is reluctant to apply the continuing-violation doctrine to § 1983 cases. *E.g.*, *Sharp v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003), and the Supreme Court has limited the doctrine even its most familiar context: employment-discrimination law. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

**2. Debt Financing**

Nor does Rittner's contention that the prison must allow him "to go in[to] debt" so that inmates can fund both the filing of lawsuits and pay for their medical care does not state a plausible claim. *Lindell v. McCallum*, 352 F.3d 1107, 1111 (7th Cir. 2003) (inmates have "no constitutional entitlement to [a] subsidy . . . to prosecute a civil suit; like any other civil litigant, he must decide which of his legal actions is important enough to fund").[3]

**3. Legal Mail**

Rittner has, however, plausibly alleged prison officials improperly confiscated his legal mail.

Defendants' argument in opposition to this claim rests entirely on their contention the mail at issue was not, in fact, legal mail, but contraband. Because this argument contradicts the facts alleged by Rittner – namely, that the material was "exculpatory evidence" needed to overturn his state-court conviction – dismissal is unwarranted.

To the extent Rittner claims the Ohio State Highway Patrol threatened him for requesting this material, I will dismiss the claim because the Patrol is not a named and served defendant.

**C. ADA Claims**

Congress enacted the ADA to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

"Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, 'be denied the benefits of the services, programs, or activities of a

---

[3] To the extent Rittner alleges he lacks sufficient funds not only to fund his litigation and pay for his health care, but also to purchase items from the commissary (Doc. 1 at ¶¶53-55), these allegations also fail to state a plausible claim. *Dotson v. Calhoun*, 2008 WL 160622, *4 (W.D. Mich.).

public entity, or be subjected to discrimination by any such entity.'" *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (quoting 42 U.S.C. § 12132).

Rittner's claims under the ADA appear to be that the prison discriminated against him by: 1) refusing to issue him a second hearing aid; and 2) adopting a policy that grants favorable parole consideration to inmates who participate in programs that Rittner, because of his disabilities, cannot partake in. (Doc. 1 at ¶¶60-72).

Defendants argue I should dismiss these claims because "the evidence Plaintiff filed makes clear that he received numerous accommodations." (Doc. 94 at 41).

This argument lacks merit, as Rittner is not contesting the sufficiency of the accommodations he received. Rather, he is contending the failure to provide another accommodation (the second hearing aid, where prison policy ordinarily limits prisoners to a single hearing aid) and the lack of opportunities for a disabled prisoner like himself to earn favorable parole consideration is illegal under the ADA.

As defendants have not advanced a persuasive argument for dismissing those ADA claims, I decline to dismiss them.

### D. Qualified Immunity

Defendants' last argument for dismissal is that they are entitled to qualified immunity.

According to the defendants, Rittner alleges only a "difference[ ] of opinion" over the medical care he needs, that they did not provide him "with an amount or type of care upon demand," and that they did not give him "more than the reasonable accommodations already provided pursuant to the ADA." (Doc. 94 at 50).

19

Once again, however, defendants advance their own version of what Rittner's complaint alleges, and they refuse to view the allegations in the light most favorable to Rittner. As explained above, Rittner has advanced plausible claims under existing First Amendment, Eighth Amendment, and ADA standards.

Accordingly, defendants' one-paragraph argument for qualified-immunity is without merit.

## Conclusion

It is, therefore,

ORDERED THAT: defendants' motion for judgment on the pleadings (Doc. 94) be, and the same hereby is, granted in part and denied in part as provided herein.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge