# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Daniel L. Rittner, Sr.,            Case No. 3:13CV1345

    Plaintiff

    v.                                  **ORDER**

Jesse Williams, Warden, et al.,

    Defendants

This is a civil rights case under 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

The plaintiff, Daniel Rittner, is a former inmate of the Ohio Department of Rehabilitation and Correction (ODRC). He filed this suit in 2013, alleging that prison officials have been deliberately indifferent to his serious medical needs, refused to make reasonable accommodations for his alleged disabilities, and violated his right to access to the courts.

I dismissed the complaint because Rittner had, "on at least eight prior occasions, filed an action in federal court that was dismissed as frivolous or for failure to state a claim for relief." *Rittner v. Williams*, 2013 WL 4782356, *1 (N.D. Ohio 2013).

The Sixth Circuit reversed, however, finding that Rittner had adequately alleged that he was in imminent danger of physical harm and was therefore entitled to file *in forma pauperis*.

Following the Circuit's remand and a rather protracted, to say the least, round of motion practice,[1] I granted in part and denied in part the defendants' motion for judgment on the pleadings. *Rittner v. Williams*, 2016 WL 1223221 (N.D. Ohio 2016). My order identified a narrow set of claims in Rittner's sprawling pleadings – his original complaint, an "addendum" thereto, and his "amended/supplemental" complaint – that survived the Rule 12(c) motion:

1. Rittner's Eighth Amendment deliberate-indifference claims based on:

    a. defendants' interference with, and refusal to provide, the care and treatment ordered by Dr. Paquelet, a pain specialist;

    b. the treatment Rittner received on March 11, 2014.

2. Rittner's Eighth Amendment deliberate-indifference/retaliation claim alleging that defendants delayed his annual physical in retaliation for filing grievances.

3. Rittner's Eighth Amendment claim that prison officials denied him follow-up care for leg pain because he could not afford a co-pay.

4. Rittner's claim that defendant Kris Edwards, a prison healthcare administrator, retaliated against Rittner for requesting for medical care.

5. Rittner's First Amendment claim that defendants improperly confiscated his legal mail.

6. Rittner's ADA claim based on prison officials' refusal to accommodate his disabilities.

*Rittner*, *supra*, 2016 WL 1223221 at *6–10.

The parties thereafter undertook a period of discovery that culminated in the defendants' filing of an amended motion for summary judgment. (Doc. 171). Rittner filed an opposition, and the defendants have replied.

For the following reasons, I grant the defendants' motion.

---

[1] For an accounting of some of the fifty-eight motions that Rittner, acting *pro se*, filed after the Circuit's remand order, and the attendant delay they produced in this case, see my decision in *Rittner v. Williams*, 2016 WL 4013634 (N.D. Ohio 2016).

**Standard of Review**

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323. Once the movant carries its burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I accept the nonmovant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

**Discussion**

**A. Eighth Amendment Claims – Interference and Failure to Treat**

Defendants argue that they are entitled to summary judgment on Rittner's Eighth Amendment claims because there is no evidence "suggesting Defendants personally interfered with the prescription[s] or care ordered for him by any medical professional." (Doc. 171, PageID 1767). According to the defendants, the 590 pages of Rittner's medical records generated while he was in ODRC custody establish that "no prescription or care ordered for him . . . was interfered with[.]" (*Id.*, PageID 1768).

In support, defendants cite medical records establishing that, between May, 2012 and June, 2015, Rittner received, *inter alia*, the following medical care:

- a scrotal ultrasound for a reported testicular mass;

- knee sleeves, a cane, and wrist splints;

- an off-site ophthalmological consult that found no evidence that Rittner suffered from a detached retina;

- multiple X-rays that showed alignment within normal limits;

- a thyroid ultrasound;

- a hearing aid;

- MRIs as recommended by doctors who examined Rittner at Ohio State University; and

- a restriction to light-duty work in the prison.

(Doc. 171, PageID 1768 (citing Doc. 171–1) (Rittner's medical records)).

As for Rittner's claim that prison officials failed to provide him a needed hearing aid, the defendants cite medical records showing that:

- Rittner received multiple hearings aids, some of which broke after Rittner got them wet and some that Rittner lost;

- Rittner's hearing has been more or less stable since 2009, though his hearing in his right ear had somewhat worsened; and

- on multiple occasions a medical provider found that Rittner's hearing aid was broken, the provider ordered a replacement, and Rittner picked up the new device.

(Doc. 171, PageID 1769 (citing Doc. 171–1) (Rittner's medical records)).

Regarding Rittner's claim that the defendants refused to provide him with a TENS unit, the defendants point to medical records documenting that Rittner received a TENS unit and an appropriate medical restriction allowing him to carry the unit through the prison. (Doc. 171, PageID 1769 –70 (citing Doc. 171–1) (Rittner's medical records)).

In response to Rittner's claim that defendants were deliberately indifferent to his serious medical needs on March 11, 2014, the defendants cite medical records establishing that Rittner – who complained that day of arm pain but denied having chest pains – refused to visit the prison's

4

medical wing and requested that he instead be placed on "sick call" for the following morning. (Doc. 171–1, PageID 1797).

These same records show that, when Rittner arrived at the medical wing on March 12, Rittner said that he was experiencing the same problems he had experienced the previous week. When medical personnel told Rittner that he needed to comply with the treatment plan that had been issued the week before, Rittner insisted that he needed to see a doctor but left when staff told him that he needed to make a co-pay if he wished to see a doctor. (*Id.*, PageID 1802).

Defendants also emphasize that there is no evidence that any of their alleged conduct during this episode injured Rittner in any way. (Doc. 171, PageID 1772).

As for Rittner's claim about a delayed annual physical, the medical records do not support such a claim. (Doc. 171 –1). Nor does Rittner's complaint contain any non-conclusory allegations that would support a finding that Rittner had objectively serious needs requiring a physical, or that defendants subjectively recognized that Rittner had such needs but wantonly delayed a needed physical examination. Nor, finally, is there any evidence that delaying the physical harmed Rittner.

Rittner's opposition brief does not address any of these arguments or the evidence on which they are based. (Doc. 174, PageID 1946–55).

Rather, Rittner argues that the defendants were deliberately indifferent in their handling of: 1) his cervical spine disorder, nerve damage, and cervical pain in 2010; 2) his swollen leg in January, 2010; and 3) his need for Synthroid medication, to treat a thyroid disorder, between January and May, 2014. (*Id*, PageID 1950–52).

These arguments provide no basis for overcoming the defendants' motion.

5

The first two issues are outside the scope of my prior order, which limited the claims that survived the defendants' motion for judgment on the pleadings. *Rittner*, *supra*, 2016 WL 1223221 at *6–10. Furthermore, even if claims relating to these first two issues were somehow still in the case, the two-year statute of limitations would bar them.

Likewise, Rittner's claims about missed Synthroid injections are also outside the scope of my prior order.

In holding that some of Rittner's failure-to-treat allegations survived the Rule 12(c) motion, I focused on the allegations that the defendants interfered with the care ordered by a pain specialist, Dr. Paquelet. *Rittner*, *supra*, 2016 WL 1223221 at *6. However, there was no allegation in the pleadings – and, more importantly at this stage, there is no evidence in the record – that: 1) Dr. Paquelet prescribed Synthroid for Rittner as part of his pain-management therapy; 2) defendants failed to provide that medicine to Rittner; or 3) Rittner suffered injuries as a result.

In sum, the defendants have introduced medical records that completely refute Rittner's manifold complaints about the allegedly inadequate and unconstitutional medical care he received in prison. Rittner's opposition cites no evidence showing that a genuine dispute of material fact remains on any of his Eighth Amendment interference or failure-to-treat claims, as Rule 56 requires. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is generally disputed must support the assertion by citing to particular parts of materials in the record[.]").

To be sure, Rittner's brief represents that he "and his counsel are compiling the exhibits" that support their position "and these will be filed under separate cover." (Doc. 174, PageID 1946). Rittner adds that Fed. R. Civ. P. 56 "provides for filing of affidavits and supporting evidence after submission" of a summary-judgment motion or an opposition thereto. (*Id.*).

6

But that procedure is not appropriate in this case for at least two reasons.

First, Rule 56(d) authorizes a court to "allow time to obtain affidavits or declarations or take discovery" if the nonmovant "cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d)(2). However, the nonmovant must first "show[ ] by affidavit or declaration" that, "for specified reasons," the evidence in question is not available when the opposition brief is filed. *Id.* Rittner has filed no such affidavit or declaration, nor does his opposition hint at why these materials were unavailable at the time of filing.

Second, and even setting aside Rittner's non-compliance with Rule 56(d)(2), it is difficult to imagine any circumstances in which it would be appropriate to grant Rittner, who has been represented by counsel since March 25, 2017 (Doc. 161), even more time to file his supporting evidence.

After Rittner's counsel accepted the appointment in this case, I gave the parties six months to complete discovery relating to dispositive motion practice. (Doc. 166).

Thereafter, once the defendants had moved for summary judgment, I extended, on three occasions –for a total of 150 days – the deadline for Rittner's opposition brief. (Non-document entries of Oct. 10, 2019; Nov. 27, 2018; and Jan. 24, 2019). Notably, I granted the third extension despite having cautioned Rittner, after granting the second extension, that no further extensions would be permitted. And in granting the third extension, I cautioned Rittner that the failure to file an opposition brief by February 28, 2019 would result in the dismissal of this case for want of prosecution.

Although Rittner technically complied with my order of January 24, 2019 by filing an opposition brief on February 28, the opposition brief – bereft of any evidence – was necessarily

incomplete. In these circumstances, I have no inclination to permit Rittner to file additional materials that he should have long ago compiled and filed with this court.

For all these reasons, I find that the undisputed evidence of record shows that no reasonable jury could find for Rittner on any of his Eighth Amendment failure-to-treat or interference claims. The defendants are therefore entitled to summary judgment on those claims.

### B. Eighth Amendment Claim – Charging a Co-Pay

Rittner alleged in his amended/supplemental complaint that the defendants refused to schedule a follow-up appointment regarding his leg pain because he would not or could not make a co-pay. (Doc. 55).

The medical records attached to the defendants' motion flesh out the claim.

According to a request for health services that Rittner completed on June 30, 2014, Rittner claimed that he needed "emergency care for pain that prevents me from walking." (Doc. 171–1, PageID 1785). Rittner further claimed that "care was denied." (*Id.*). He added that "I object to copay." (*Id.*).

Defendants argue that they are entitled to summary judgment because there is no evidence that any of the named defendants in this suit were responsible for denying the care that Rittner requested or requiring a co-pay. (Doc. 171, PageID 1773). They also argue that there is no evidence that they denied Rittner needed medical care despite knowing that he was indigent and unable to pay for it. (*Id.*, PageID 1772, 1773–74).

Once again, Rittner's opposition brief does not respond to these arguments. (Doc. 174, PageID 1946–55).

I agree with defendants that they are entitled to summary judgment on this claim.

First, there is no evidence that one of the named defendants, as opposed to some other actor within the ODRC, was responsible for this alleged violation. This is fatal to Rittner's claim, since a defendant's personal involvement is necessary to establish liability under § 1983. *E.g.*, *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).

Second, because the undisputed evidence establishes that Rittner was not indigent at the time of June 30, 2014 incident, it would have been constitutional for the defendants (even if they were personally involved) to require him to make a copay.

"It is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of their ability to pay." *White v. Corr. Med. Serv., Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004). "Charging inmates who can pay for medical care does not constitute deliberate indifference and cannot be the basis of an Eighth Amendment claim." *Martin v. Bova*, 2014 WL 2155089, *3 (N.D. Ohio 2014) (Gwin, J.).

ODRC policy provides that "[a]ll medical services initiated by an inmate . . . will carry a $2.00 co-pay charge." (Doc. 171 –2, PageID 1841). The policy further provides that "[a]ll medical services initiated by an inmate through emergency procedures will be free if an actual emergency exists." (*Id.*). Finally, the policy provides that indigent inmates – those who earned or received $12.00 in the thirty days preceding a request for medical care – are exempt from the co-pay requirement. (*Id.*).[2]

The record establishes that Rittner earned between $18.00 and $20.00 per month while in ODRC custody. (Docs. 2 –1 & 2–2). Accordingly, ODRC had the authority under its unchallenged policies to require that Rittner pay a co-pay for the treatment he requested on June 30, 2014.

---

[2] Rittner does not discuss these policies, let alone argue that they are unconstitutional.

What's more, contemporaneous evidence in the record tends to show that Rittner could have afforded the co-pay, but preferred to use his money to fund the lawsuits he was then pursuing. (Doc. 171 –1, PageID 1786 (Rittner's statement on June 5, 2014 that "I am on court deadline in criminal conviction and cannot make a copay.")); (*Id.*, PageID 1794 (Rittner's statement on July 8, 2014 that "I don't want to be seen for nurse's sick call. I can't afford it. I need the money for my court case.")).

The evidence of record, undisputed or even mentioned by Rittner, establishes that no defendant denied him needed medical care because he was unable to afford a copay. The defendants are therefore entitled to summary judgment on this claim.

### C. First Amendment Claims

#### 1. Retaliation

To prevail on a First Amendment retaliation claim, "a plaintiff must show that (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and '(3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *Hazel v. Quinn*, 933 F. Supp. 2d 884, 888 (E.D. Mich. 2013) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

Rittner alleged that defendant Edwards retaliated against him for requesting medical care by making "death threats," intentionally delaying medical treatment, and filing "trumped up false disciplinary charges." *Rittner*, *supra*, 2016 WL 1223221 at *4.

Edwards argues that she is entitled to summary judgment because, first, Rittner has not established that he engaged in protected conduct. According to Edwards, Rittner's requests for

medical care were all frivolous – and thus outside the scope of protected First Amendment activity. (Doc. 171, PageID 1775).

Edwards also argues that there is no evidence that she denied Rittner medical care or issued false disciplinary charges. (*Id.*).

Next, Edwards argues that there is no evidence to prove causation – i.e., "no timelines regarding the alleged death threat, deprivation of medical care, or trumped up disciplinary charge, nor has [Rittner] produced any evidence supporting any inference of retaliation therefrom." (*Id.*, PageID 1776).

Finally, Edwards contends that no reasonable jury could find that her alleged misconduct would or deter a person of ordinary firmness from ceasing to engage in protected conduct. (*Id.*). On the contrary, Edwards observes, Rittner's requests for medical care continued unabated despite her alleged misconduct.

Rittner's opposition brief offers no response to any of these arguments. (Doc. 174, PageID 1946–55).

I agree with Edwards that she is entitled to summary judgment on this claim.

Most obviously, there is no evidence that would permit a jury to find or infer that a causal connection existed between Rittner's allegedly protected activity and Edwards's alleged misconduct. The record is totally devoid of a timeline of events, for example, from which a jury could reasonably conclude that Edwards had an impermissible retaliatory motive.

Furthermore, to the extent that Rittner's claim depends on Edwards's having denied him medical care or issued false disciplinary charges, there is simply no evidence that Edwards in fact engaged in these adverse actions.

Accordingly, there is no genuine issue of material fact as to Rittner's retaliation claim.

11

## 2. Confiscation of Legal Mail

Rittner alleged that, on March 26, 2013, Warden Williams ordered the confiscation of legal mail he had received from the Common Pleas Court of Fulton County, Ohio. *Rittner*, *supra*, 2016 WL 1223221 at *2.

Defendants argue that they are entitled to summary judgment on this claim because the mail at issue – correspondence and documentation from the clerk of courts that contained, *inter alia*, information about the victim of Rittner's crimes – was not, in fact legal mail. (Doc. 171, PageID 1778; Doc. 171 –3, PageID 1865).

Rittner makes no response to this argument. (Doc. 174, PageID 1946–55).

I agree that the defendants are entitled to summary judgment on Rittner's legal-mail claim.

First, Rittner's complaint did not allege that the seized mail was marked as "legal mail," "privileged," or attorney-client correspondence. There was thus nothing on the face of the correspondence that should have alerted prison officials that the mail at issue was protected legal mail.

Second, Rittner alleged, rather, that the documents came from the clerk of the common pleas court. However, the Sixth Circuit held in *Sallier v. Brooks*, 343 F.3d 868, 876 (6th Cir. 2003), that "mail from a county clerk or register of deeds does not implicate constitutionally protected legal mail rights." Thus the mail at issue was not within the scope of Rittner's right to access the courts.

## D. ADA Claims

Finally, Rittner alleges that the defendants violated the ADA by refusing to provide him a second hearing aid (prison policy allegedly limits inmates to one such aid) and denying him the

12

opportunity to earn favorable parole consideration (because the most favor allegedly goes to inmates who participate in programs that Rittner cannot, because of his disabilities, participate in). *Rittner*, 2016 WL 1223221 at *9.

To prevail on these claims, Rittner must show that "he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting 42 U.S.C. § 12132).

Defendants argue that they are entitled to summary judgment on these claims.

As for the hearing-aid claim, defendants refer back to the evidence discussed *supra* showing that Rittner received multiple hearing aids and that Rittner's hearing has been more or less stable since 2009. (Doc. 171, PageID 1780). Regarding the parole claim, defendants emphasize that Rittner has failed to identify either a single program that he could not participate in due to his disabilities or even "one opportunity for parole that he has lost due to his diminished hearing in his right ear." (*Id.*, PageID 1782).

Rittner does not respond to these arguments or address his ADA claims. (Doc. 174, PageID 1946–55).

I agree with the defendants that they are entitled to summary judgment.

The undisputed evidence shows that defendants treated Rittner's hearing problems with multiple hearing aids. It also shows that Rittner's hearing has been stable since 2009. (Doc. 171–1, PageID 1834 –35). Furthermore, there is no evidence showing that defendants were deliberately indifferent when they refused to provide a hearing aid for Rittner's right ear, which had only slightly diminished hearing. (*Id.*, PageID 1829); *see also S.S. v. Eastern Kentucky*

*Univ.*, 532 F.3d 445, 453 –55 (6th Cir. 2008) (discussing need to prove deliberate indifference in connection with claim under Title II of the ADA).

Finally, there is no evidence to support Rittner's claim that his disabilities have precluded him from participating in any prison programs, just as the record is empty of any evidence that Rittner in fact lost an opportunity to obtain parole.

For all these reasons, defendants are entitled to judgment as a matter of law.

## Conclusion

It is, therefore,

ORDERED THAT defendants' amended motion for summary judgment (Doc. 171) be, and the same hereby is, granted.

So ordered.

/s James G. Carr
Sr. U.S. District Judge